**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EMIGRANT BANK FINE ART FINANCE, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> RIVER NORTH COLLECTIONS, LLC, an Illinois limited liability company, and ROGER L. WESTON, a natural person. <br><br> Defendants. | Case No. |

## VERIFIED COMPLAINT

Emigrant Bank Fine Art Finance, LLC hereby complains against River North Collections, LLC and Roger L. Weston (collectively, the "Defendants") as follows:

THE PARTIES

1. Plaintiff Emigrant Bank Fine Art Finance, LLC ("Lender") is a Delaware limited liability company with a principal place of business in New York, New York. Lender's members are: (i) Emigrant Bank, a savings bank chartered under the laws of the State of New York with a principal place of business in New York, which is wholly owned by Emigrant Bancorp, Inc., a bank holding company incorporated in the State of Delaware with a principal place of business in New York, (ii) Augenblick Family Investors LLC, a Delaware limited liability company with a principal place of business in New York, whose sole member is Andrew Augenblick, a natural person and resident of the State of New York, and (iii) Fine Art Partners, LLC, a Delaware limited liability company with a principal place of business in New York,

whose members are Emigrant Bank, Augenblick Family Investors LLC, and natural persons and residents of the State of New York, including Barbara Chu, Li Jun Xian, Nancy Harrison, and Megan Pringle.

2. Defendant River North Collections, LLC ("River North") is an Illinois limited liability company with a principal place of business located at 360 W. Illinois, Suite 11C, Chicago, Illinois 60654. On or about May 23, 2017, River North changed its name to Weston Collection, LLC. On or about October 25, 2017, according to filings with the Illinois Secretary of State, River North reverted back to its original name of River North Collections, LLC. Upon information and belief, River North's sole member is the Roger L. Weston Revocable Trust, a trust organized, upon information and belief, under the laws of the State of Illinois operated by Roger L. Weston ("Weston") in his capacity as Trustee.

3. Weston is a natural person and a resident of the State of Florida.

JURISDICTION AND VENUE

4. The parties are of diverse citizenship.

5. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

7. The claims forming the basis of this Verified Complaint, or a significant portion thereof, arose in that geographical area which is contained within the federal judicial district known as the Northern District of Illinois.

8. Venue is properly in this Court pursuant to 28 U.S.C. § 1391.

FACTS IN SUPPORT OF ALL COUNTS

### A. The Note and Security Agreement

9. On October 3, 2014, Defendants executed a Term Note payable to Lender in the original principal amount of $5,000,000 (as thereafter modified or amended, the "Note"), a copy of which is attached hereto as Exhibit A.

10. Pursuant to the Note, the loan evidenced by the Note (the "Loan") would mature upon the occurrence of any "Events of Default," as that term was defined in Section 8 of the Note. *Note,* § 8. Up and until the Loan matured, Defendants agreed to pay interest on the outstanding amount due under the Loan, monthly. *Note,* § 2.

11. A failure to pay any amounts due under the Note when due constitutes an Event of Default under the Note. *Id.,* § 8.

12. Upon the occurrence of any Event of Default, Lender is entitled to, among other things, declare the Note, all interest thereon, and any and all other amounts payable thereunder to be immediately due and payable. *Id.* In addition, Lender is entitled to collect from Defendants all costs and expenses of collection and enforcement, including attorneys' fees and costs. *Id.,* § 10.

13. On October 3, 2014, in order to secure repayment of the amounts due under the Loan, River North executed a Security Agreement, a copy of which is attached hereto as Exhibit B (the "Security Agreement"), in favor of Lender.

14. Specifically, pursuant to the express terms of the Security Agreement, and in order to secure "the prompt payment in full when due…of the obligations of [River North] under the Note…," River North granted Lender a security interest in the following:

> (i) the works of art described on Exhibit A attached [to the Security Agreement] (hereinafter being collectively referred to as the "Works"),

3

>and (ii) in connection with such Works (A) all documents of title or documents representing the same and all records, files and writings with respect thereto, all accounts, contract rights, chattel paper, instruments, documents, general intangibles and other rights or obligations of any kind, whether now or hereafter existing and whether now owned or hereafter acquired, arising out of or relating thereto, (B) all rights now and hereafter existing in and to all security agreements, leases and other contracts now or hereafter existing and securing or otherwise relating to such accounts, contract rights, chattel paper, instruments, documents general intangibles or obligations (any and all such accounts, contract rights, chattel paper, instruments, documents, general intangibles and obligations being hereinafter referred to as the "Receivables"), and, (C) all proceeds of any and all of the foregoing and, to the extent not otherwise included, all payments under insurance (whether or not the Lender or Agent is the loss payee thereof), or any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing.

(collectively, the "Collateral"). *Security Agreement,* § 1.

15. The Works consist primarily of museum-quality antique Chinese lacquerware, most of which were made between 960 A.D. through the 18th century. *Security Agreement, Exhibit A,* p. 2.

16. Lender perfected its security in the Collateral by filing a financing statement against River North in accordance with the Uniform Commercial Code. A copy of the UCC-1 evidencing Lender's lien is attached hereto as <u>Exhibit C</u>.

17. Pursuant to the Security Agreement, the Works are to be stored and maintained primarily at River North's place of business at 360 W. Illinois Street, Chicago, Illinois (the "Illinois Street Location"). *Security Agreement,* § 3.2.

18. The Security Agreement grants Lender's agent, Emigranta Corp. ("Agent"), the right to inspect the Collateral not less than annually to verify, authenticate or otherwise evaluate the location, condition, environment and value of, and the security system protecting, the Works. *Id.,* § 3.8.

19. Upon the occurrence of an Event of Default under the Note, Lender is entitled to, among other things, require River North to assemble all the Collateral and make the Collateral available to Agent, and to require River North to grant access to the Illinois Street Location "for the specific purpose of the Agent's taking possession of, removing or putting the Collateral in saleable form…" *Id.,* § 4.

      **B.**      **Amendments to the Note and Security Agreement**

20. On December 9, 2015, Defendants executed that certain Allonge to Term Note (the "First Allonge"), a copy of which is appended to the Note attached hereto as Exhibit A, pursuant to which Defendants and Lender agreed to amend certain covenants governing ongoing reporting requirements of Defendants included within the Note. *First Allonge,* § 3.

21. On June 5, 2017, the Note was further modified by that certain Second Allonge to Term Note, a copy of which is appended to the Note attached hereto as Exhibit A (the "Second Allonge"), pursuant to which Lender and Defendants acknowledged River North's change of business name to Weston Collections, LLC ("Weston, LLC").

22. On June 5, 2017, the Security Agreement was similarly modified pursuant to the terms of that certain Amendment of Security Agreement, a copy of which is attached hereto as Exhibit D (the "Security Agreement Amendment"), to reflect the corporate name change of River North to Weston Collections, LLC. *Security Agreement Amendment,* § 1.1.

23. Other than the First Allonge, the Second Allonge and the Security Agreement Amendment, there have been no modifications to the Note or the Security Agreement.

### C. Defendants' Defaults

24. On or about October 3, 2016, a representative of the Agent arrived at the Illinois Street Location in order to conduct the previously-scheduled annual inspection of the Works. At that time, Defendants' agents were unable to produce seven of the Works (collectively, the "Missing Works") for inspection and review. Upon information and belief, in violation of the Security Agreement, the Missing Works had been removed from the Illinois Street Location without the knowledge or consent of Lender. *See, Security Agreement,* § 2.1 ("For so long as the Obligations are outstanding under the Note, the Works shall be located at one of the locations listed on Exhibit A….").

25. Furthermore, subsequent to Agent's October 3, 2016 inspection at the Illinois Street Location, Lender was advised that one of the Works, a Persimmon-colored Stoneware Tea Bowl from the Northern Song Dynasty, 11th through 12th century (C61) (the "Sold Work"), had been sold by River North without Lender's knowledge or consent, and proceeds from the Sale had not been remitted to Lender.

26. This sale of the Sold Work violated the express terms of the Security Agreement, and constitutes an additional Event of Default under the Loan. *Id.,* § 3.7 ("[River North] will not…sell, assign…, exchange or otherwise dispose of any of the Collateral….").

27. Furthermore, since proceeds of the Sold Work constitute Collateral for the Loan, River North was obligated to turnover possession of those proceeds to Lender, which River North has not done. *Id.,* § 1 (defining "Collateral" to include "all proceeds of any of the foregoing…").

28. Finally, Defendants have failed to make the monthly interest payments due under the Loan on either November 1, 2017, December 1, 2017 or January 1, 2018, and have failed and refused to cure these payment defaults notwithstanding demand made by Lender.

29. On January 12, 2018, Lender advised Defendants of their defaults under the Loan and demanded that River North make the Collateral available for recovery to Lender or Agent in accordance with the terms of the Security Agreement. A copy of Lender's demand is attached hereto as Exhibit E.

30. Notwithstanding Lender's demand, Defendants have failed and revised to tender possession or control of the Collateral to Lender.

31. In contrast, Defendants are sequestering the Collateral and have failed to make the Collateral available for inspection and review by Lender or Agent since the inspection that took place in October 2016. Given River North's prior unauthorized sale of the Sold Work, and the fact that neither Lender nor Agent have inspected any of the Missing Works for more than a year, Defendants' refusal to grant access to the Works for inspection and review is problematic.

32. This failure and refusal is exacerbated by the fact River North could be marketing additional Works for sale without Lender's consent.

33. Given the foregoing, Lender has identified not less than five Events of Default that have occurred and are continuing under the Note and the Security Agreement, including: (i) River North's failure to maintain the Works at the Illinois Street Location, (ii) River North's sale of the Sold Work without Lender's knowledge or consent, (iii) River North's failure to remit proceeds of the Sold Work to Lender, (iv) Defendants' failure to make the monthly payments due under the Loan as and when due; and (v) Defendants' failure and refusal to remit possession

7

and control of the Collateral to Lender or its Agent following Defendants' defaults under the Note and Security Agreement.

34. Indeed, as a result of the occurrence of these Events of Default, Lender has demanded the turnover of the Collateral from Defendants, which demand has been refused.

### D. Lender's Damages

35. As a result of Defendants' breaches of the Note and the Security Agreement, Lender has been damaged in an amount equal to not less than $5,148,993.05 as of January 12, 2018, not including attorneys' fees or costs, including: (i) $5,000,000 in outstanding principal, and (ii) $148,993.05 in accrued and unpaid interest. In addition, Lender's damages continue to accrue interest at a rate equal to the Base Rate, as that term is defined in the Note, plus eight percent (8%) until the Loan is repaid. *Note,* § 1.

36. In addition to the foregoing, the Note permits Lender to collect, as additional damages, its attorneys' fees and costs of collection incurred in relation to the Loan and the Collateral.

37. As a result of Defendants' payment defaults under the Note, Lender is informed and believes that Defendants are unable to satisfy the outstanding balances due under the Loan.

### E. Lender's Right to Possession of the Collateral

38. Pursuant to the Security Agreement, and as a result of River North's defaults thereunder, Lender is lawfully entitled to possession of the Collateral.

39. By failing to remit possession of the Collateral to Lender, Defendants are impeding Lender's ability to recover the same and to mitigate its damages under the Loan.

40. The Collateral has not been (i) taken for any tax, assessment or fine levied by virtue of any law of Illinois against property of Lender, nor (ii) seized under any lawful process

against the goods and chattels of Lender subject to that lawful process, nor (iii) held by virtue of any order for replevin against Lender.

41. Lender has not inspected the Collateral for more than a year, and is not aware if additional works have been removed or sold from the collection. Notwithstanding the foregoing, following a review of Lender's books and records, Lender estimates that the Collateral has an orderly liquidation value of approximately $7,900,000, not including the Missing Works.

## COUNT I

### Breach of Note - Defendants

1–41. Lender incorporates and realleges paragraphs 1 through 41 as paragraphs 1 through 41 of this Count I.

42. Lender has performed all terms and conditions of the Note to be performed by Lender.

43. In contrast, Defendants have failed to perform their obligations under the Note, and have, among other things, failed to make payments to Lender when due thereunder.

44. Under the Note, Lender is entitled to contractual money damages from Defendants as provided therein, both for the arrearages in payments due thereunder, as well as any and all additional damages specified as a remedy after default.

45. The Note provides that Lender shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

WHEREFORE, Lender prays that this Court enter a judgment in its favor and against the Defendants in the amount due under the Note, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, penalties, and interest, together with such other and further relief as shall be just and equitable.

## COUNT II

### Breach of Security Agreement – River North

1–45. Lender incorporates and realleges paragraphs 1 through 45 as paragraphs 1 through 45 of this Count II.

46. Lender has performed all terms and conditions of the Security Agreement to be performed by Lender.

47. In contrast, River North has not performed under the Security Agreement and has, *inter alia*, failed to remit possession and control of the Collateral to Lender upon demand.

48. Under the Security Agreement, Lender is entitled to contractual money damages from River North as provided therein, including the recovery of Lender's attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

WHEREFORE, Lender prays that this Court enter a judgment in its favor and against River North in the amount due under the Security Agreement, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, penalties, and interest, together with such other and further relief as shall be just and equitable.

## COUNT III

### Replevin – Defendants

1–48. Lender incorporates and realleges paragraphs 1 through 48 as paragraphs 1 through 48 of this Count III.

49. Lender is lawfully entitled to possession of the Collateral.

50. Lender has demanded that the Collateral be delivered or surrendered to Lender, but the Defendants have failed and refused to comply with Lender's demands.

51. Defendants have wrongfully detained, and still wrongfully detain, the Collateral by refusing to surrender the Collateral upon demand.

52. Lender has suffered damages by the Defendants' wrongful detention of the Collateral.

53. Based upon the best knowledge, information, and belief of Lender, the majority of the Collateral continues to be located at the Illinois Street Location in Cook County, Illinois.

54. Lender claims the value of the Collateral not delivered to the officer by virtue of the enforcement of an order of replevin.

55. If the Collateral is not restored to Lender, Lender will have damages for its value, and for damages sustained by the Defendants' wrongful detention and use.

56. The Collateral has not been taken for any tax, assessment, or fine levied by virtue of any Illinois law against the property of Lender or against Lender individually, nor seized under any lawful process against the goods and chattels of Lender subject to lawful process, nor held by virtue of any order for replevin against Lender.

57. Pursuant to 735 ILCS 5/19-101 *et seq.*, Lender is entitled to an Order of Replevin.

WHEREFORE, Lender prays that: (a) an order of replevin be entered in favor of Lender granting Lender possession of the Collateral; (b) Lender be awarded a judgment against the Defendants for the value of the Collateral if not delivered; (c) Lender be awarded a judgment against the Defendants for damages for detention; (d) Lender be awarded its costs, attorneys' fees, and interest on all unpaid amounts due and owing; and (e) Lender be granted such other and further relief as shall be just and equitable.

## COUNT IV

### Request for a Preliminary Injunction or, Alternatively, a
### Temporary Restraining Order – Defendants

1-57.   Lender incorporates and realleges paragraphs 1 through 57 as paragraphs 1 through 57 of this Count IV.

58.   Lender requests a preliminary injunction to prevent immediate and irreparable harm to Lender by enjoining Defendants from selling, disposing of, concealing, moving to an alternative location outside the jurisdiction of this Court, or otherwise compromising the Collateral.  In addition, Lender requests that this Court require Defendants to properly maintain and preserve the Collateral until such time as possession of the Collateral is remitted to Lender or its agent.

59.   Lender requests a hearing on the requested preliminary injunctive relief, after proper notice to Defendants, at the earliest possible time.

60.   Alternatively, in the event this Court is unable to expeditiously hold a hearing on Lender's request for the preliminary injunctive relief, Lender requests that this Court enter a temporary restraining order prohibiting Defendants, their officers, employees, or agents from continuing to use, selling, disposing of, concealing, moving to an alternative location outside the jurisdiction of this Court, or otherwise compromising the Collateral, and thereafter schedule a preliminary injunction hearing and award such preliminary injunctive relief as may be needed. Lender requests that the temporary injunction order issue with or without the presence of Defendants, as this Court in its discretion determines to be appropriate.  Lender does not, in any event, object to providing notice to Defendants.

61. Lender entitled to such preliminary injunctive relief preserving the condition and value of the Collateral in advance of a replevin hearing.

62. Lender has unambiguous legal rights, including the right to replevin, that should be protected with preliminary injunctive relief. The Illinois replevin statute provides Lender the right to recover the Collateral upon a showing that Lender is entitled to possession of the same.

63. Given the Defendants' possession and/or control of the Collateral, it is within the power of the Defendants to conceal, waste, encumber, convert, convey, or remove the Collateral from the jurisdiction of the Court, and Lender's post-judgment remedy would be otherwise inadequate.

64. As stated more fully herein, as a result of Defendants' default under the Loan, Lender is entitled to immediate possession of the Collateral. This right to possession will be compromised if Defendants improperly continue to hold, sequester, conceal, move, or otherwise compromise the Collateral.

65. Lender would also face immediate irreparable harm if Defendants were allowed to sell, dispose of, conceal, move to an alternative location outside the jurisdiction of this Court, or otherwise compromise the Collateral before a replevin hearing may be held. Any claim for damages that Lender may have against Defendants would potentially be compromised in light of Defendants' potential insolvency, as evidenced by Defendants' failure to pay the amounts due under the Note in accordance with its terms.

WHEREFORE, Lender respectfully requests this Court schedule an expedited preliminary injunction hearing and thereafter enter an order granting preliminary injunctive relief against Defendants, and in favor of Lender, prohibiting Defendants, as applicable, as well as any of their employees, officers, agents, subsidiaries or affiliates from continuing to use, selling,

disposing of, concealing, moving to an alternative location outside the jurisdiction of this Court, or otherwise compromising the Collateral until such time as a replevin hearing in this matter can be conducted; or, in the alternative, entering an immediate temporary restraining order against Defendants, as applicable, and in favor of Lender, prohibiting Defendants, well as any of their employees, agents, subsidiaries and/or affiliates from selling, disposing of, concealing, moving to an alternative location outside the jurisdiction of this Court, or otherwise compromising the Collateral until a preliminary injunction hearing may be held awarding such preliminary injunctive relief as may be required in advance of a replevin hearing, as well as granting any addition relief this Court deems to be appropriate under the circumstances.

Dated: January 18, 2018

                                                EMIGRANT BANK FINE ART FINANCE, LLC, a Delaware limited liability company

                                                By:    /s/ Ann E. Pille
                                                           One of Its Attorneys

Ann E. Pille (IL Bar No. 6283759)
apille@reedsmith.com
Reed Smith LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

## VERIFICATION

I, the undersigned, Barbara Chu, am employed by Plaintiff, Emigrant Bank Fine Arts Finance, LLC as a _Partner_. In that capacity, I have personal knowledge of the facts set forth in the attached Verified Complaint. I have reviewed the allegations of fact set forth in the Verified Complaint and hereby verify that said facts are true, correct, and accurate.

_____
Barbara Chu

Subscribed and sworn before me
this 18th day of January, 2018.

_____
Notary Public

LINDA YOUNG
Notary Public, State of New York
No. 01YO5067926
Qualified in Nassau County
Commission Expires October 28, 2018

15