# EXHIBIT A

**TERM NOTE**

New York, New York

October 3, 2014

$5,000,000.00

   **I.**  **Promise to Pay.** FOR VALUE RECEIVED, each of the undersigned hereby jointly and severally promises to pay, on the earlier of October 3, 2019 or the date, if any, on which the Obligations (as defined below) are declared due and payable by the Lender under paragraph VIII (the "Maturity Date"), to the order of EMIGRANT BANK FINE ART FINANCE, LLC (the "Lender"), at its office at 6 East 43rd Street, 25th Floor, New York, New York 10017 or at such other office as the Lender may subsequently designate in writing, the principal sum of FIVE MILLION U.S. DOLLARS (US$5,000,000.00) or, if less, the unpaid principal of the amount advanced hereunder. Repaid advances may not be reborrowed. Each of the undersigned also jointly and severally agrees to pay interest on any and all unpaid amounts from and including the date hereof to the Business Day (a day of the year on which banks in New York City are not required or permitted to be closed) on which any principal amount becomes due, at the interest rate per annum as determined in accordance with the terms below, but in no event in excess of the maximum rate permitted by applicable law. The undersigned further agrees to pay interest on all obligations of the undersigned hereunder at any time that an Event of Default (as defined below) has occurred and is continuing, payable upon demand, at the Base Rate (as defined below) plus 8%, but in no event in excess of the maximum rate permitted by applicable law. The proceeds of the advance hereunder shall be used by the undersigned for lawful purposes only.

   **II.**  **Interest; Closing Fee.** The undersigned promises to pay interest on the outstanding amount of the advance hereunder monthly on the last Business Day of each month (in arrears) at an interest rate equal at all times to the Base Rate. "Base Rate" means the greater of: (a) a fluctuating interest rate per annum equal at all times to the prime rate published from time to time in the "Key Rates" section on the website "bloomberg.com" plus 0.50%; and (b) 3.75% per annum. All computations of interest shall be made by the Lender on the basis of a year of 360 days for the actual number of days elapsed; provided, however, that, if such computation shall cause the amount of interest payable hereunder to exceed the maximum rate of interest permitted by applicable law, all computations of interest shall be made upon the basis of a year of 365 or 366 days. Each determination of an interest rate hereunder shall be conclusive and binding for all purposes, absent manifest error. In addition, the undersigned shall pay a closing fee to the Lender on the date hereof in the amount of $37,500, which fee shall be fully earned and non-refundable when paid. Of such fee, $12,500 shall be payable by Lender to UBS as a loan referral fee.

   **A. Highest Lawful Rate.** Notwithstanding anything to the contrary contained elsewhere in this Note or in any other document related to this Note, the parties hereto hereby agree that all agreements between them under this Note and any other document related to this Note, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no contingency or event whatsoever shall the amount paid, or agreed to be paid, to the Lender for the use, forbearance, or detention of the money loaned to the undersigned and evidenced hereby or thereby or for the performance or payment of any covenant or obligation contained herein or therein, exceed the maximum non-usurious interest rate, if any, that at any time or from time to time may be contracted for, taken, reserved, charged or received on the Obligations, under the laws of the State of New York (or the laws of any other jurisdiction whose laws may be mandatorily applicable notwithstanding other provisions of this Note and the other documents related to this Note), or under applicable federal laws which may presently or hereafter be in effect and which allow a higher maximum non-usurious interest rate than under the laws of the State of New York (or such other jurisdiction), in any case after taking into account, to the extent permitted by applicable law, any and all relevant payments or charges under this Note and the other documents related to this Note executed in connection herewith, and any available exemptions, exceptions and exclusions (the "Highest Lawful Rate"). If due to any circumstance whatsoever, fulfillment of any provision of this Note or any other document

related to this Note at the time performance of such provision shall be due shall exceed the Highest Lawful Rate, then, automatically, the obligation to be fulfilled shall be modified or reduced to the extent necessary to limit such interest to the Highest Lawful Rate, and if from any such circumstance the Lender should ever receive anything of value deemed interest by applicable law which would exceed the Highest Lawful Rate, such excessive interest shall be applied to the reduction of the principal amount then outstanding hereunder or on account of any other then outstanding Obligations and not to the payment of interest, or if such excessive interest exceeds the principal unpaid balance then outstanding hereunder and such other then outstanding Obligations, such excess shall be refunded to the undersigned.  All sums paid or agreed to be paid to the Lender for the use, forbearance, or detention of the Obligations and other Debt (as defined below) of the undersigned to the Lender shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such Debt, until payment in full thereof, so that the actual rate of interest on account of all such Debt does not exceed the Highest Lawful Rate throughout the entire term of such Debt.  The terms and provisions of this paragraph shall control every other provision of this Note, the other documents related to this Note and all other agreements between the parties hereto.

      **III.**    **Payments.**  All payments of principal, interest and other amounts due under this Note shall be made to the Lender by check or wire transfer to account number 260352333500 maintained with *Emigrant Bank* (ABA Number 226070403) in lawful money of the United States not later than 12:00 noon (New York City time) on the day when due.  The Lender shall provide to the undersigned, no later than ten Business Days before the last Business Day of each month, an invoice indicating the amount of accrued and unpaid interest that will become due on the last Business Day of such month if no further advances are made before such last Business Day.  The Lender's failure to provide such an invoice to the undersigned shall not excuse the undersigned from making any payments required under this Note on the date any such payment is due or from complying with any of the terms hereof to comply with the terms of the Security Agreement dated the date hereof (as amended, supplemented or otherwise modified from time to time, the "Security Agreement") by the undersigned in favor of Emigranta Corp., as agent for the Lender.  All payments of principal, interest and other amounts payable hereunder shall be made without defense, claim, counterclaim, setoff or recoupment.  The proceeds of any advance hereunder shall be wired otherwise made as directed by the undersigned.

      **A.  Principal Repayment.**  The undersigned shall repay the principal amount of this Note in full on the Maturity Date.

      **B.  Prepayments.**  The undersigned shall have the right to prepay this Note in whole or in part at any time, without penalty; provided, however, that should the undersigned repay this Note in whole or in part on or before the one-year anniversary of the date hereof, the undersigned shall pay the Lender a prepayment fee equal to one percent (1.0%) of the principal amount prepaid.

      **C.  Increased Costs.**  If, after the date of this Note, any change in applicable law or regulation or in the interpretation or administration thereof by any governmental authority charged with the interpretation or administration thereof (whether or not having the force of law), and which change is applicable generally to other financial institutions, shall change the basis of taxation of payments to the Lender of the principal of or interest on the advances made by the Lender hereunder or any fees or other amounts payable hereunder (other than changes in respect of taxes imposed on the overall net income of the Lender), or shall impose, modify or deem applicable any reserve, special deposit or similar requirement against assets of, deposits with or for the account of or credit extended by the Lender or shall impose on the Lender any other condition affecting this Note or the advances hereunder, and the result of any of the foregoing shall be to increase the cost to the Lender of making or maintaining the advances hereunder or to reduce the amount of any sum received or receivable by the Lender hereunder (whether of principal, interest or otherwise), then the undersigned shall pay to the Lender such additional amount or amounts as will compensate the Lender for such additional costs incurred or reduction suffered.

    **IV.**    **Taxes.**

    (a)    Any and all payments by the undersigned under this Note shall be made free and clear of and without deduction for any and all present or future taxes, levies, imposts, deductions, charges or withholdings, and all liabilities with respect thereto (all such taxes, levies imposts, deductions, charges, withholdings and liabilities being hereinafter referred to as "Taxes").

    (b)    In addition, the undersigned shall pay any present or future stamp, documentary, excise, property or similar taxes, charges or levies that arise from any payment made under this Note or from the execution, delivery or registration of, or otherwise with respect to, this Note (all such taxes, charges and levies being hereinafter referred to as "Other Taxes").

    (c)    The undersigned shall indemnify the Lender for the full amount of Taxes and Other Taxes, and for the full amount of taxes imposed by any jurisdiction on amounts payable under this Paragraph IV, paid by the Lender and any liability (including, without limitation, penalties, additions to tax, interest and expenses) arising therefrom or with respect thereto. This indemnification payment shall be made within thirty days from the date the Lender makes written demand therefor.

    (d)    Without prejudice to the survival of any other agreement of the undersigned under this Note, the agreements and obligations of the undersigned contained in this Paragraph IV shall survive the payment in full of principal and interest under this Note.

    **V.**    **Representations and Warranties.** To induce the Lender to make any advance under this Note, the undersigned represents and warrants as follows: (i) all necessary action has been taken to authorize the execution, delivery and performance by the undersigned of this Note and all agreements, instruments and other documents executed in connection herewith, and the transactions contemplated hereby and thereby; (ii) the execution, delivery and performance by the undersigned of this Note and all agreements, instruments and other documents executed in connection herewith do not contravene any law or contractual restriction binding on or affecting the undersigned or any of the undersigned's property; (iii) no authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by the undersigned of this Note or any agreements, instruments and other documents executed in connection herewith; (iv) this Note and all agreements, instruments and other documents executed in connection herewith is the legal, valid and binding obligation of the undersigned enforceable against the undersigned in accordance with its terms; (v) there is no pending or threatened investigation, litigation or proceeding affecting the undersigned that (A) could be reasonably likely to have a material adverse effect on the financial condition, assets, liabilities, operations or prospects of the undersigned or the ability of the undersigned to perform the undersigned's obligations under this Note or any agreements, instruments and other documents executed in connection herewith or (B) purports to affect the legality, validity or enforceability of this Note or any agreements, instruments and other documents executed in connection herewith; (vi) since the date of the most recent financial statements of the undersigned and any guarantor furnished to the Lender in connection with this Note, no event has occurred that could be reasonably likely to have a material adverse effect on the financial condition, assets, liabilities, operations or prospects of the undersigned or any guarantor or the ability of the undersigned or any guarantor to perform the undersigned's or guarantor's obligations under this Note or any agreements, instruments and other documents executed in connection herewith; (vii) except with respect to the Existing Debt as set forth in the most recent financial statements of the undersigned, there exist no liens, security interests or other charges or encumbrances, or any other type of preferential arrangements, upon or with respect to any of the undersigned's properties or the properties of any guarantor, and neither the undersigned nor any guarantor has assigned any right to receive income to

secure any Debt (as defined below) of any person or entity except the Lender and liens securing the Existing Debt (defined below), provided that such liens do not encumber the Collateral (as defined in the Security Agreement); and (viii) the undersigned have no Debt except for Debt disclosed on Roger L. Weston's personal financial statement dated July 24, 2014 (the "Existing Debt") and the Debt owed the Lender.

**VI.     Conditions Precedent.**  The obligation of the Lender to make the initial advance hereunder is subject to the delivery to the Lender of the following: (i) this Note and the Security Agreement, each duly executed by undersigned; (ii) evidence of insurance acceptable to the Lender covering the Works (as defined in the Security Agreement) in an amount not less than $12,000,000 and naming Lender as loss payee and additional insured, (iii) an Affidavit of Ownership attesting to the undersigned's ownership of the Works, duly completed and executed by the undersigned, together with bills of sale with respect to the Works, (iv) a spousal affidavit from Pamela Weston; (v) an acceptable legal opinion from counsel to River North Collections, LLC and the Roger L. Weston Revocable Trust; (vi) such other documentation relating to the Obligations as the Lender may request, in each case in form and substance satisfactory to the Lender, and dated the date hereof or such other date as is satisfactory to the Lender; (vii) receipt by Lender of search results from the Art Loss Register with respect to the Works and registration with the Art Loss Register of all Works, (viii) payment of the closing fee described in Section II hereof; and (ix) reimbursement of Lender's fees and expenses, including but not limited to legal fees and expenses.

**VII.     Covenants.**  So long as this Note or any note or notes which may be given in renewal or extension of all or any part of the indebtedness evidenced by this Note (each of which being an "Other Note"; the indebtedness evidenced hereby or by any Other Note being hereinafter referred to as the "Obligations") shall remain unpaid, the undersigned will (and will cause each guarantor to):

> (i) comply in all material respects with all applicable laws, rules, regulations and orders, such compliance to include, without limitation, paying before the same become delinquent all taxes, assessments and governmental charges imposed upon the undersigned or its property, except to the extent contested in good faith and by appropriate proceedings;
>
> (ii) furnish or cause to be furnished to the Lender, as soon as available and in any event within (A) 15 days after the filing thereof, copies of the income tax returns of the undersigned and any guarantor, commencing with the year 2014 and all schedules thereto, (B) 90 days after the end of each calendar year, internally prepared financial statements of undersigned and any guarantor, in form and detail satisfactory to the Lender as of the end of or for such year, together with such other information respecting the financial condition of undersigned and any guarantor as the Lender may from time to time request; and (C) within 30 days after the end of each calendar quarter, detailed reports setting forth the location of all Collateral and noting any changes or sales since the prior quarter-end;
>
> (iii) notify the Lender not less than thirty (30) days prior to relocating or changing undersigned's principal place of business or principal residence from the location set forth on the signature page of this Note;
>
> (iv) give the Lender written notice of any Event of Default or any event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default, within three Business Days of the occurrence thereof;
>
> (v) not incur, create or suffer to exist any Debt other than the Existing Debt, up to $3,000,000 of residential mortgage Debt and up to $25,000,000 of other debt secured by income generating assets.  For purposes hereof, "Debt" of any person or entity means (A) indebtedness of such person or entity for borrowed money or for the deferred purchase price of property or services, (B) all obligations of such person or entity

evidenced by bonds, notes, debentures or other similar instruments, (C) all indebtedness created or arising under any conditional sale or other title retention agreement, (D) all obligations under leases which are or should be recorded as capital leases in accordance with generally acceptable accounting principles under which such person or entity is the lessee, and (E) all amounts guaranteed directly or indirectly in any manner by such person or entity including by entering into a purchase agreement or any other means to assure a creditor against loss, including by the grant of any lien, security interest or other charge or encumbrance upon or in property;

(vi) not grant or otherwise allow to exist any liens, security interests or other encumbrances, provided that undersigned and any guarantor may grant liens to secure the Existing Debt and other Debt permitted pursuant to clause (v) above, provided further, however, that in no event shall such liens, security interests or other encumbrances encumber any of the Collateral;

(vii) not change the manager of River North Collections, LLC from Greatbanc,Inc., or allow River North Collections, LLC to have any members other than Roger L. Weston Revocable Trust; and

(viii) not use any accounts with Lender or its affiliates in connection with any business of placing, receiving or otherwise knowingly transmitting bets or wagers through the internet.

**VIII. Events of Default; Remedies.** If any of the following events ("Events of Default") shall occur and be continuing: (a) the failure of the undersigned or any guarantor to pay when due any of the Obligations when payable unless, in the case of Obligations evidenced hereby or other Obligations payable on demand, when payment is demanded; (b) the failure of the undersigned or any guarantor to perform or observe any covenant or other obligation hereunder, under the Security Agreement or under any instrument, agreement or other document delivered in connection herewith or therewith including, without limitation, the failure of the undersigned or any guarantor to furnish to the Lender any financial statement, report or other document required or requested by the Lender in accordance with Paragraph VII(ii); (c) the filing of any petition by or against the undersigned, or any guarantor, or the commencement of any proceedings for the relief or readjustment of any indebtedness of the undersigned or any guarantor, either through reorganization, composition, extension or otherwise, under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or the taking of any action by the undersigned or any guarantor to authorize any of the foregoing; (d) the general nonpayment of the undersigned or any guarantor of its debts as such debts become due, or the admission in writing by the undersigned or any guarantor of its inability to pay such debts generally, the making by the undersigned or any guarantor of a general assignment for the benefit of creditors or the taking advantage by the undersigned or any guarantor of any insolvency law; (e) the appointment of a receiver or conservator for any property of the undersigned or any guarantor; (f) the attachment or distraint of any funds or other property in which the undersigned or any guarantor has rights which may be in, or come into, the possession or control of the Lender, or of any third party acting for or designated by the Lender, or in which a security interest has been granted to or for the benefit of the Lender, or of the same becoming subject at any time to any mandatory order of any court or other legal process; (g) any representation or warranty made by the undersigned or any guarantor under or in connection with this Note, or any other agreements, instruments or other documents executed in connection herewith or therewith, or any financial statement or certificate delivered in connection herewith or therewith shall have been materially incorrect when made or deemed made; (h) the undersigned or any guarantor shall be in breach or default of its obligations under any agreement or instrument with the Lender, or any agreement or instrument with any other party, if the effect of such breach or default is to cause the obligations thereunder to become due or redeemed or to permit the holder or holders of such obligations to declare such obligations due or require such obligations to be redeemed prior to their stated maturity; (i) any judgment or order for the payment of money that is not supported by a bond or other method reasonably acceptable to the Lender is rendered by a court or governmental authority against the undersigned or any guarantor; (j) there shall occur a material adverse change in the financial condition, assets or liabilities of

5

the undersigned or any guarantor; or (k) the death of undersigned or any guarantor; then, (x) the Lender may declare this Note and any Other Note, all interest hereon or thereon, and any and all other amounts payable hereunder or thereunder, to be immediately due and payable, whereupon this Note, each Other Note, all such interest and all such other amounts shall become and be immediately due and payable, all without presentment, protest, demand or notice of any kind, all of which are expressly waived by the undersigned, (y) any or all of the other Obligations then existing, shall, at the option of the Lender, become due and payable forthwith and (z) the Lender may terminate any obligation it may have to make any advance hereunder, all without presentment, protest, demand or notice of any kind, all of which are expressly waived by the undersigned; provided, however, that, in the event of any actual or deemed entry of an order for relief with respect to the undersigned or any guarantor under the Federal Bankruptcy Code, this Note, each Other Note, all such interest and all such other amounts shall automatically become and be due and payable, and any such obligation of the Lender shall be terminated, all without presentment, protest, demand or notice of any kind, all of which are expressly waived by the undersigned. Notwithstanding anything to the contrary set forth herein, in the case of a non-monetary default, provided that the non-monetary default is capable of being cured, the Lender shall provide the undersigned with written notice specifying the default and a 30 day period to cure said default.

      **IX.**    **Right of Setoff.**  In addition to and not in limitation of all rights of offset that the Lender or any of its affiliates may have under applicable law, whether or not the Lender has made any demand for payment hereunder or such obligations are unmatured, the Lender and its affiliates shall have the right at any time and from time to time, to the fullest extent permitted by law, with or without notice to the undersigned, to set off, appropriate and apply to the payment or reduction, either in whole or in part, of the amount owing on all or any of the Obligations evidenced by this Note or by any Other Note which may be given in renewal or extension of all or any part of such indebtedness, whether or not the Lender has made any demand for payment hereunder or the Obligations are unmatured, all deposits (general or special, time or demand, provisional or final) and other obligations at any time held or owing by the Lender or any of its affiliates to the undersigned.

      **X.**    **Costs/Expenses; Etc.**  The undersigned agrees to pay on demand all costs and expenses in connection with the preparation, execution, delivery, administration, modification, amendment and enforcement (whether through legal proceedings, negotiations or otherwise) of this Note and any other document to be delivered hereunder or in connection herewith (such costs and expenses shall include, without limitation, the fees and disbursements of legal counsel).  The undersigned agrees to indemnify and hold harmless the Lender and each of its directors, officers, employees, agents, affiliates and advisors from and against any and all claims, damages, losses, liabilities, costs and expenses (including, without limitation, fees and disbursements of counsel) which may be incurred by or asserted against the Lender or any such director, officer, employee, agent, affiliate or advisor in connection with or arising out of any investigation, subpoena, litigation or proceeding related to or arising out of this Note or any other document to be delivered hereunder or in connection herewith or any transaction contemplated hereby or thereby (but in any case excluding any such claims, damages, losses, liabilities, costs or expenses incurred by reason of the gross negligence or willful misconduct of the indemnitee).  The obligations of the undersigned under this paragraph shall survive the payment in full of this Note.

      **XI.**    **Assignment.**  The undersigned may not assign any of its rights or obligations under this Note.  The Lender may assign to one or more banks or other entities all or a portion of its rights under this Note or issue pass through certificates or other securities ("Securities") evidencing a beneficial interest in a rated or unrated public offering or private placement (a "Securitization").  In the event of an assignment of all of its rights, the Lender may transfer this Note to the assignee.  In the event of an assignment of a portion of its rights under this Note, the Lender shall deliver to the undersigned a new note to the order of the assignee in an amount equal to the principal amount assigned to the assignee and a new note to the order of the Lender in an amount equal to the principal amount retained by the Lender (collectively, the "New Notes").  Such New Notes shall be in an aggregate principal amount equal to the principal amount of this Note, shall be dated the effective date of the assignment and otherwise shall be substantially identical to this Note.  Upon receipt of the New Notes from the Lender, the undersigned shall execute such New Notes and, at the expense of the undersigned, promptly deliver such New Notes to the Lender.  Upon receipt of the executed New Notes from the undersigned, the

Lender shall return this Note to the undersigned.  The Lender and the assignee shall make all appropriate adjustments in payments under this Note for periods prior to such effective date directly between themselves.  In the event of an assignment of all or any portion of its rights hereunder, the Lender may transfer and deliver all or any of the property then held by it as security for the undersigned's obligations hereunder and the assignee shall thereupon become vested with all the powers and rights herein given to the Lender with respect thereto.  After any such assignment or transfer, the Lender shall be forever relieved and fully discharged from any liability or responsibility in the matter, and the Lender shall retain all rights and powers hereby given with respect to property not so transferred.  The Lender may sell participations to one or more banks or other entities in or to all or a portion of its rights under this Note; provided, however, that in such case the Lender shall remain the holder of this Note and accordingly the undersigned shall continue to deal solely and directly with the Lender in connection with the Lender's rights under this Note.  The Lender may, in connection with any assignment, participation or Securitization or proposed assignment, participation or Securitization, disclose to the assignee or participant or proposed assignee or proposed participant or any purchaser or prospective purchaser of Securities any information relating to the undersigned furnished to the Lender by or on behalf of the undersigned, provided that, prior to any such disclosure, the assignee, participant or purchaser or proposed assignee, participant or purchaser shall agree to preserve the confidentiality of any confidential information related to the undersigned received by it from the Lender.  At the request of the Lender, at the undersigned's expense, the undersigned shall satisfy the market standards which may be reasonably required in the marketplace or by Standard & Poor's Ratings Services, a division of McGraw Hill, Inc., Moody's Investors Service, Inc., Fitch, Inc. or any other nationally-recognized statistical rating agency which has rated the Securities in connection with a Securitization or the sale or pledge of the Note, any participation therein or the Securities including, without limitation, the delivery of a certificate, in form and substance satisfactory to the Lender, confirming, among other things, the outstanding principal amount of the Obligations, that attached thereto are true and complete copies of the Note and the Security Agreement and all amendments thereto and that no Event of Default is then in existence.

      **XII.** **"Property".**  The word "property," as used herein, includes goods and merchandise, funds, cash balances, securities (including certificated, uncertificated and book-entry securities), investment property, financial assets, accounts receivable, general intangibles, choses in action and any and all other forms of property, whether real, personal, or mixed, tangible or intangible, together with the proceeds thereof, any right, title or interest of the undersigned therein or thereto, and any documents relative thereto.

      **XIII.** **Obligations of Others.**  The undersigned's obligations under this Note will also be binding on its successors and assigns.

      **XIV.** **Notices.**  All notices and other communications provided for hereunder shall be in writing and sent by certified or registered mail, return receipt requested, or nationally recognized overnight delivery service, or delivered by hand or courier, with all charges prepaid.  Notices to the Lender shall be sent to its address set forth in paragraph I above.  Notices to the undersigned shall be sent to the address for the undersigned set forth below until such undersigned specifies another address in a notice delivered to the Lender in accordance with this paragraph.  Notice will be deemed received, if to the Lender, upon actual receipt, and if to the undersigned, within five Business Days of the mailing of notice in the case of certified or registered mail and within one Business Day if sent by overnight delivery service, or upon confirmation of delivery by hand or courier, or when delivery is refused.

      **XV.** **Headings.**  Headings as used herein are for convenience only and shall have no force or effect upon the construction or interpretation hereof.

      **XVI.** **Severability.**  In case any provision in or obligation under this Note or any other document related to this Note shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

    **XVII.** **Entire Agreement.** This Note and the other documents related to this Note constitute the entire understanding between the parties hereto with respect to the subject matter hereof and supersede any prior or contemporaneous agreements, written or oral, with respect thereto.

    **XVIII.** **Waiver; Governing Law.** The undersigned hereby waives presentment for payment, demand, notice of dishonor and protest of this Note and further agrees that this Note shall be deemed to have been made under and shall be governed by the laws of the State of New York in all respects, including matters of construction, validity and performance, without giving effect to principles of conflicts of law (other than under Section 5-1401 of the New York General Obligations Law, except with respect to interest rate, which shall be governed by applicable law) and that none of its terms or provisions may be waived, altered, modified or amended except as the Lender may consent thereto in writing duly signed for and on its behalf.

    **XIX.** **Joint and Several Liability.** If there is more than one undersigned executing this Note, all agreements, conditions, covenants and provisions of this Note shall be the joint and several obligation of each undersigned.

    **XX.** **Jurisdiction.** Without limiting the right of the Lender to bring any action or proceeding against the undersigned or against its property arising out of or relating to any obligation of the undersigned or this Note (an "Action") in the courts of other jurisdictions, the undersigned hereby irrevocably submits, with respect to any Action (and, exclusively, with respect to any other proceeding involving the undersigned and the Lender), to the jurisdiction of any New York State or Federal court sitting in New York City, and the undersigned hereby irrevocably agrees that any Action may be heard and determined in such New York State court or in such Federal court. The undersigned hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of any Action in any jurisdiction. The undersigned may be served in any manner permitted by law.

XXI. JURY TRIAL WAIVER. THE UNDERSIGNED AND THE LENDER (BY ITS RECEIPT OF THIS NOTE) HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OBLIGATION OF THE UNDERSIGNED OR THIS NOTE.

Borrower:

X *[signature]*

ROGER L. WESTON

Address: 360 West Illinois Street, Suite 11C
Chicago, IL 60654


RIVER NORTH COLLECTIONS, LLC

By: GreatBanc, Inc., Manager

By: X *[signature]*

Name: Roger L. Weston
Title: President

Address: 360 West Illinois Street, Suite 11C
Chicago, IL 60654

9

## ALLONGE TO TERM NOTE

**PAYOR:** River North Collections, LLC and Roger L. Weston (jointly, severally and collectively, the "Borrower")

**PAYEE:** Emigrant Bank Fine Art Finance, LLC ("Lender")

**DATE OF NOTE:** October 3, 2014

**ORIGINAL PRINCIPAL AMOUNT:** $5,000,000

### BACKGROUND

A. The Lender is the holder of a certain Term Note, dated October 3, 2014, executed by the Borrower and delivered to the Lender in the original principal amount of $5,000,000 (as amended from time to time, the "Note").

B. The Lender has agreed, upon the request of the Borrower and subject to the satisfaction of certain other terms and conditions, among other things, to amend the Note.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Borrower and the Lender agree as follows:

1. This Allonge to Term Note ("Allonge") shall be and remain attached to and shall constitute an integral part of the Note from and after the date hereof.

2. All references in the Note to the term *"Note"* shall mean the Note as amended by this Allonge.

3. Section VII(ii)(C) of the Note is deleted in its entirety.

4. The effectiveness of this Allonge is subject to the Lender's receipt of an original countersigned copy by Borrower of this Allonge.

5. This Allonge shall be an amendment to, but not a cancellation or satisfaction of, the Note.

6. This Allonge and all documents comprising or relating to this Allonge shall be construed in accordance with and governed by the internal laws of the State of New York without reference to conflict of laws principles.

US_ACTIVE-124737264.1

       7.     This Allonge and all documents referred to in, comprising or relating to this Allonge, constitute the sole agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

       8.     Any provision in this Allonge that is held to be inoperative, unenforceable, voidable, or invalid in any jurisdiction shall, as to that jurisdiction, be ineffective, unenforceable, void or invalid without affecting the remaining provisions in any other jurisdiction, and to this end the provisions of this Allonge are declared to be severable.

       9.     **EXCEPT AS MODIFIED HEREBY, ALL OF THE TERMS AND PROVISIONS OF THE NOTE ARE HEREBY RATIFIED AND CONFIRMED.**

IN WITNESS WHEREOF, this Allonge to Term Note has been executed by the undersigned as of December 9, 2015.

x /s/ Roger L. Weston
Roger L. Weston

**RIVER NORTH COLLECTIONS, LLC**

By: GreatBanc, Inc., Manager

By: x /s/ Roger L. Weston
Name: Roger L. Weston
Title: President

**EMIGRANT BANK FINE ART FINANCE, LLC**

By: /s/
Name: LiJun Xian
Title: Vice President

- 3 -

## SECOND ALLONGE TO TERM NOTE

**ORIGINAL PAYOR:** River North Collections, LLC and Roger L. Weston (jointly, severally and collectively, the "Borrower")

**PAYEE:** Emigrant Bank Fine Art Finance, LLC ("Lender")

**DATE OF NOTE:** October 3, 2014

**ORIGINAL PRINCIPAL AMOUNT:** $5,000,000

## BACKGROUND

A. The Lender is the holder of a certain Term Note, dated October 3, 2014, executed by the Borrower and delivered to the Lender in the original principal amount of $5,000,000 (as amended from time to time, the "Note").

B. River North Collections, LLC has advised the Lender that it has changed its name to Weston Collection, LLC.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Borrower and the Lender agree as follows:

1. This Second Allonge to Term Note ("Allonge") shall be and remain attached to and shall constitute an integral part of the Note from and after the date hereof.

2. All references in the Note to the term *"Note"* shall mean the Note as amended by this Allonge.

3. All references in the Note to "River North Collections, LLC" shall be deemed references to Weston Collection, LLC, f/k/a River North Collections, LLC.

4. The effectiveness of this Allonge is subject to the Lender's receipt of an original countersigned copy by Borrower of this Allonge.

5. This Allonge shall be an amendment to, but not a cancellation or satisfaction of, the Note.

6. This Allonge and all documents comprising or relating to this Allonge shall be construed in accordance with and governed by the internal laws of the State of New York without reference to conflict of laws principles.

7. This Allonge and all documents referred to in, comprising or relating to this Allonge, constitute the sole agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

8. Any provision in this Allonge that is held to be inoperative, unenforceable, voidable, or invalid in any jurisdiction shall, as to that jurisdiction, be ineffective, unenforceable, void or invalid without affecting the remaining provisions in any other jurisdiction, and to this end the provisions of this Allonge are declared to be severable.

9. **EXCEPT AS MODIFIED HEREBY, ALL OF THE TERMS AND PROVISIONS OF THE NOTE ARE HEREBY RATIFIED AND CONFIRMED.**

**IN WITNESS WHEREOF,** this Second Allonge to Term Note has been executed by the undersigned as of June 5, 2017.

_____
Roger L. Weston


**WESTON COLLECTION, LLC f/k/a River North Collections, LLC**

By: GreatBanc., Inc., Manager
By: _____
Name: Roger L. Weston
Title: President


**EMIGRANT BANK FINE ART FINANCE, LLC**


By:_____
   Name:
   Title:

– 2 –

7. This Allonge and all documents referred to in, comprising or relating to this Allonge, constitute the sole agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

8. Any provision in this Allonge that is held to be inoperative, unenforceable, voidable, or invalid in any jurisdiction shall, as to that jurisdiction, be ineffective, unenforceable, void or invalid without affecting the remaining provisions in any other jurisdiction, and to this end the provisions of this Allonge are declared to be severable.

9. **EXCEPT AS MODIFIED HEREBY, ALL OF THE TERMS AND PROVISIONS OF THE NOTE ARE HEREBY RATIFIED AND CONFIRMED.**

**IN WITNESS WHEREOF,** this Second Allonge to Term Note has been executed by the undersigned as of June \_\_, 2017.

_____
Roger L. Weston

**WESTON COLLECTION, LLC f/k/a River North Collections, LLC**

By: GreatBanc., Inc., Manager

By:_____
Name: Roger L. Weston
Title: President

**EMIGRANT BANK FINE ART FINANCE, LLC**

By:_____
Name: LIJUN XIAN
Title: Partner