## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| EMIGRANT BANK FINE ART FINANCE, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:18-cv-383 |
| v. | ) ) | Judge Matthew F. Kennelly |
| RIVER NORTH COLLECTIONS, LLC, an Illinois limited liability company, and ROGER L. WESTON, a natural person, | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT
## OF THEIR RULE 12(b)(7) MOTION TO DISMISS

Stephen Novack
*snovack@novackmacey.com*
Stephen J. Siegel
*ssiegel@novackmacey.com*
Courtney D. Tedrowe
*cdt@novackmacey.com*
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900

Doc. No. 991686

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(7), Defendants River North Collections, LLC ("River North") and Roger L. Weston ("Weston") (together, "Defendants"), by and through their counsel, Novack and Macey LLP, hereby submit this Memorandum In Support Of their Rule 12(b)(7) Motion to Dismiss ("Motion"), filed contemporaneously herewith.

## I.      SUMMARY OF ARGUMENT

Plaintiff Emigrant Bank Fine Art Finance, LLC ("Plaintiff") is a financial institution that seeks to enforce a purported term note and purported security agreement that it alleges Defendants executed in exchange for a $5 million loan. Defendants' central defense to Plaintiff's claims will be that these purported loan documents are void and unenforceable because they were forged by a third-party. Defendants bring this Motion because: (a) Emigranta Corporation ("Emigranta") should be joined in this case, if feasible; and (b) if it is not feasible, then the case should be dismissed and this dispute should proceed in the Circuit Court of Cook County, Illinois, where a lawsuit brought by Defendants is pending against Plaintiff and Emigranta to establish the invalidity of the same forged loan documents (the "Circuit Court Action").

As explained below, non-party Emigranta is a necessary party within the meaning of Rule 19 because, though it is Plaintiff's agent, it also purports to be a co-obligee on the forged security agreement that Plaintiff seeks to enforce. Indeed, Emigranta is the sole "secured party" named on the purported UCC-1 financing statement filed pursuant to the security agreement.

Defendants have attempted to cooperate with Plaintiff to ensure that Emigranta is either brought into this case, or otherwise agrees to be bound by the Court's rulings. If either occurs, Defendants would voluntarily dismiss the Circuit Court Action. For reasons unknown to Defendants, however, Plaintiff has not been cooperative in that effort. Accordingly, Defendants

request that the Court enter an order: (a) directing that non-party Emigranta be made a party-plaintiff to this action; or (b) in the alternative, if Emigranta cannot feasibly be made a party-plaintiff, then dismissing Plaintiff's Complaint ("Complaint" or "Compl. ¶__" (Dkt. No. 1).)[1]

## II.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

### The Parties

Plaintiff is a subsidiary of Emigrant Bank, a savings bank chartered under New York law. (Compl. ¶ 1.)

Defendant Weston is a renowned art collector and exhibitor, a trustee of the Art Institute of Chicago (the "Museum") and the chairman of its Asian art committee. (*See* Complaint for Declaratory and Injunctive Relief filed by Defendants against Plaintiff and Emigranta in the Circuit Court Action (the "Circuit Court Complaint"), attached hereto as Exhibit A ¶¶ 12.)[2] Weston and his wife have donated, among other things, valuable Japanese artwork to the Museum that is displayed in a gallery bearing their names. (*Id.*)

Defendant River North is an LLC of which Weston's revocable trust is the sole member. (Compl. ¶ 2.) River North owns certain unique, historical, valuable and irreplaceable pieces of

---

[1]    Although this Motion is brought pursuant to Rule 12(b)(7), the Court also has authority to direct the joinder of parties, such as Emigranta, pursuant to Rule 21.

[2]    Defendants recite the facts in this Section, certain of which are outside of the Complaint, for the purpose of demonstrating Emigranta's status as a necessary party. Such facts include those drawn from the Circuit Court Complaint, which was filed the morning of January 18, 2018, before Defendants knew Plaintiff had filed this case. The Circuit Court Complaint seeks, among other things, a declaration that the purported loan and security documents at issue herein were forged by a third-party and are void and unenforceable. The Court may consider matters outside the pleadings when considering a Rule 12(b)(7) motion, including information properly the subject of judicial notice. *Rotec Indus., Inc. v. Aecon Grp., Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006); *Stiles v. Whalen*, No. 13 C 3516, 2013 WL 6730797, at *1 (N.D. Ill. Dec. 20, 2013).

museum-quality Chinese artifacts (the "Works") that are stored in a secure, temperature- and humidity-controlled environment at a location in Cook County, Illinois. (Agreed Order Concerning Handling of Artworks *Pendente Lite* at 2 (Dkt. No. 8).)

**Plaintiff's Claims**

Plaintiff's Complaint alleges that, in 2014, Plaintiff loaned Defendants $5 million and that, in connection therewith, certain loan documents were executed by Weston on his own behalf and on behalf of River North (the "Purported Loan Documents"). (Compl. ¶¶ 9-23.)

The Purported Loan Documents include the following: (a) a purported term note payable to Plaintiff dated October 3, 2014 as amended by two purported allonges (the "Purported Term Note"); (b) a purported Security Agreement dated October 3, 2014, as amended (the "Purported Security Agreement"); and (c) a UCC-1 financing statement filed by non-party Emigranta dated October 3, 2014 (the "Purported Financing Statement"). (*Id.*, Exs. A (Purported Term Note), B (Purported Security Agreement) & Ex. C (Purported Financing Statement).)

The Purported Security Agreement states that it grants non-party Emigranta a security interest in 77 of the Works (the "Purported Collateral"), not only as agent for Plaintiff but also as the direct obligee to whom performance must be rendered. (*Id.*, Ex. B.) Consistent therewith, the Purported Financing Statement records Emigranta's purported security interest therein, and does so with no mention or reference to Emigranta's purported status as agent of Plaintiff. (*Id.*, Ex. C.)

The Complaint relies on the Purported Term Note and the Purported Security Agreement as being valid and enforceable, and alleges that Defendants are in breach thereof. (Compl. ¶¶ 41-48.) Plaintiff claims that Defendants have failed to make certain payments allegedly due pursuant to the Purported Term Note, and that River North has failed to adhere to the terms of the Purported Security Agreement. (*Id.*) Based on those allegations, the Complaint attempts to assert four

3

Counts: (a) breach of the Purported Term Note (Count I); (b) breach of the Purported Security Agreement (Count II); (c) replevin of the Purported Collateral pursuant to the Purported Security Agreement (Count III); and (d) a preliminary injunction in aid of replevin (Count IV).

**The Forgeries**

Although Plaintiff alleges that Weston executed the aforementioned Purported Loan Documents in 2014, as alleged in Defendants' Circuit Court Complaint (Ex. A ¶ 21) Weston (a) did not do so and (b) had no knowledge of their existence until the fall of 2017. It was only then that Weston learned that Plaintiff claimed to have made a term loan to Defendants three years earlier and to have done so on the basis of the Purported Loan Documents. (*Id.*) Weston had been unaware of the Purported Loan Documents because he never signed or agreed to them. Rather, they were and are the product of serial forgeries by Sultan Issa ("Issa"), as alleged in the Circuit Court Complaint. (*Id.* ¶¶ 1-2.)

**The Circuit Court Complaint**

Promptly after Weston learned of the Purported Loan Documents, Issa's forgeries, the unauthorized attempt to pledge the Purported Collateral and Issa's unauthorized taking of loan proceeds, Weston notified Plaintiff in writing of Issa's wrongdoing and the invalidity of the Purported Loan Documents. (*Id.* ¶ 22.) Nevertheless, since that time, the Bank has sought to enforce the Purported Loan Documents. (*Id.* ¶ 23.)

Accordingly, Defendants filed the Circuit Court Complaint against Plaintiff *and Emigranta* seeking, among other things, a declaration that the Purported Loan Documents are void, of no force or effect, and unenforceable. (Ex. A.) Counsel promptly notified Plaintiff of that lawsuit, in response to which Plaintiff notified counsel later that day that it had filed this case that same day. (Decl. of Courtney D. Tedrowe dated February 26, 2018, attached hereto as Ex. B ¶ 3, Ex. 1.)

4

**Dialogue With Plaintiff Regarding Emigranta**

After Plaintiff filed this case, Defendants repeatedly advised counsel for Plaintiff that Emigranta is a necessary party, given that -- among other things -- it is party to and obligee under the Purported Security Agreement and it filed the UCC-1 financing statement in its own name and without any reference to any agency. Moreover, Defendants offered to non-suit (without prejudice) the Circuit Court Action if Emigranta were made party to this case or if it entered into a stipulation with Defendants to be bound by the rulings the Court makes herein. While counsel for Plaintiff represented that it "has no objection to ensuring that Emigranta is bound by any order of the Court," counsel for Plaintiff has failed to engage in negotiations over a draft stipulation providing that Emigranta would be bound by any orders entered in this case, or to add Emigranta as a party plaintiff, despite several requests. (Ex. B ¶¶ 4-8 & Exs. 2-3.)

### III.   ARGUMENT

Emigranta is a necessary and indispensable party without which this action should not proceed.

When a motion is made pursuant to Rule 12(b)(7) to dismiss for failure to join a Rule 19 party, courts conduct a two-step analysis. First, courts apply Rule 19(a) to determine if a party is "necessary" to the litigation. Second, if the party is deemed necessary, but joinder is not feasible, courts apply Rule 19(b) to determine whether "in good conscience" the case can continue in the party's absence. Fed. R. Civ. P. 19(b); *401 N. Wabash Venture, LLC v. Ascher Bros. Co.*, No. 10 C 1962, 2010 WL 3699982, at *4 (N.D. Ill. Sept. 13, 2010). Each step is addressed in turn, below.

### A.   Emigranta Is A Necessary Party

Under Rule 19(a), a party is deemed "necessary" and must be joined, if feasible, where any one of the following conditions is met: (1) without that party's presence, complete relief cannot

be accorded among the existing parties; (2) the ability of the missing party to protect its interests would be impaired by its absence from the litigation; *or* (3) if joinder is not required, existing parties would be subjected to multiple or inconsistent obligations. *See Scottsdale Ins. Co. v. Knapp*, No. 13 C 988, 2013 WL 3811613, at *3 (N.D. Ill. July 22, 2013) (citing *Thomas v. United States,* 189 F.3d 662, 667 (7th Cir.1999)).

Here, each of Plaintiff's four claims either: (1) is based, directly or indirectly, on the Purported Security Agreement, which was allegedly executed "in favor of Emigranta Corp. (the "Agent") . . . as agent for Emigrant Bank Fine Art Finance, LLC" (Compl., Ex. B at 1); or (2) directly impacts the Purported Security Agreement and claims based thereon. Count II is for breach of the Purported Security Agreement, and seeks damages. (*Id.* ¶¶ 45-48.) Counts III and IV seek relief relating to the Purported Collateral that was allegedly pledged to Emigranta through the Purported Security Agreement. (*Id.* ¶¶ 48-65.) In addition, although Count I is for breach of the Purported Term Note, if the Purported Term Note is held to be invalid and unenforceable, then the Purported Security Agreement -- and Plaintiff's alleged rights thereunder -- must fall as well. (*Id.* ¶¶ 41-45.)

The plain language of the Purported Security Agreement shows that, if it were valid and enforceable, then the vast majority of River North's obligations thereunder would be owed directly to Emigranta. For example, the Purported Security Agreement, which refers to Emigranta as the "Agent," purports to provide that:

- River North "pledges and assigns to the *Agent*, and grants to the Agent a continuing security interest in," among other things, the Purported Collateral (Compl., Ex. B § 1 (emphasis added));

- River North "represents and warrants to the *Agent*" numerous matters including, without limitation, the location and authenticity of the Purported Collateral, the existence of insurance on the

Purported Collateral, and its ownership of the Purported Collateral (*id.* § 2 (emphasis added));

- The Purported Security Agreement is "effective to create a valid security interest in favor of the *Agent* in the [Purported] Collateral," which the Agent may perfect by filing a UCC financing statement (*id.* § 2.4 (emphasis added));

- River North will take all further action that may be necessary to "enable the *Agent* to exercise and enforce its rights and remedies hereunder in respect of the [Purported] Collateral" (*id.* §3.1 (emphasis added));

- River North will "permit the *Agent*" to inspect the Purported Collateral at least annually (*id.* § 3.8 (emphasis added));

- "The *Agent* may exercise in respect of the [Purported] Collateral, in addition to other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party under the Uniform Commercial Code . . ." (*id.* § 4 (emphasis added));

- The *Agent* may, as a remedy, take possession of and sell the Purported Collateral (*id.* §4(a)(ii) & (iii)); and

- The *Agent* is appointed as River North's attorney-in-fact with respect to certain acts after the occurrence of an Event of Default (*id.* § 5.8).

The Purported Security Agreement states that Plaintiff executed it solely for purposes of Section 5.9 thereof, which provides that Emigranta is appointed to act on Plaintiff's behalf thereunder. (*Id.* at 10.) But, even though Emigranta may have been acting on behalf of Plaintiff as its agent, the terms of the Purported Security Agreement would require River North to render performance directly to Emigranta, and would grant various rights directly to Emigranta. Thus, Emigranta is at least a co-obligee under that purported contract. Confirming all of this, the

7

Purported Financing Statement names Emigranta as the sole "secured party" without stating in any way that Emigranta was or is acting as agent.[3]

As an obligee under the Purported Security Agreement, Emigranta is a quintessentially necessary party to this action. As a court in this District has observed, relying on and citing numerous appellate court decisions confronting the issue:

> The prevailing view among the courts of appeals is as follows: (1) contracting parties generally are indispensable to a suit to invalidate the contract; [and] (2) co-obligees under a contract, meaning contracting parties other than the plaintiff whose rights under the contract may have been violated, who therefore are potential co-plaintiffs, are generally indispensable in suits for breach of contract; . . . .

*Nomanbhoy v. Boxwalla*, No. 12 C 5969, 2013 WL 329038, at *5 (N.D. Ill. Jan. 29, 2013) (collecting appeals court cases). Here, Emigranta is a necessary party under both categories.

With respect to category (1), this is effectively a "suit to invalidate" a contract. After all, Defendants' central defense to the Purported Loan Documents, and the claims asserted thereunder, is that they are void, invalid and of no force or effect because they were procured through Issa's forgeries. Indeed, Defendants' state court lawsuit seeks a declaration that the Purported Loan Documents are void. (Ex. A (Circuit Court Compl.) ¶¶ 1-4.)

With respect to category (2), as just demonstrated, Emigranta is an obligee under the Purported Security Agreement, whose purported rights thereunder have allegedly been violated. For each of these independent reasons, Emigranta is a necessary party.

The foregoing is consistent with and makes sense in light of the Rule 19(a) factors cited above. Without joinder of Emigranta, Defendants will not be able to obtain complete relief from

---

[3]     Because Emigranta is a purported *obligee* on the Purported Security Agreement and filed the Purported Financing Statement *in its own name* as the sole "secured party" (and without any reference to agency), the case law holding that a mere agent is generally not an indispensable party in a lawsuit against the principal is inapposite.

Plaintiff with respect to the Purported Collateral. For example, if, in the absence of Emigranta, the Court finds that the Purported Security Agreement is void and unenforceable by Plaintiff, then that finding may be a pyrrhic victory if it is not binding on Emigranta. Moreover, the Court would not have jurisdiction over Emigranta to order it to terminate and cancel the UCC-1 financing statement that it -- alone -- recorded.

For the same reasons, unless Emigranta is made a party, there is a risk that River North may be subjected to multiple or inconsistent obligations with respect to the Purported Security Agreement and Purported Collateral. Accordingly, Emigranta is a necessary party and should be joined in this lawsuit, if feasible.

**B.      Emigranta Should Be Joined, Or
The Complaint Should Be Dismissed**

The Complaint does not allege the citizenship of Emigranta, so it is unclear whether its joinder would destroy diversity. Defendants believe, however, that Emigranta is a corporation organized under the laws of New York, and has its principal place of business in New York. (Ex. B (Tedrowe Decl.) ¶ 8, Ex. 4.) Therefore, Defendants do not believe that joinder of Emigranta would destroy diversity. If that is the case, then Emigranta should be joined.

If Emigranta cannot be so joined, however, then the Complaint should be dismissed. Proceeding on these claims -- which directly concern Emigranta's claimed interest in the Purported Collateral -- without Emigranta, poses a serious risk of prejudice to River North. *See* Fed. R. Civ. P. 19(b)(1) (prejudice to an existing party). That is because even if River North prevails as against Plaintiff, it may not have clear title to the Purported Collateral because of Emigranta's Purported Financing Statement. River North would have to initiate a second lawsuit against Emigranta to address that issue. Such a second lawsuit would not only be an unnecessary waste of resources, but it could pose a risk of inconsistent results.

Without Emigranta as a party herein, there is no way to shape the relief granted in this action so as to avoid the foregoing prejudice to Defendants. *See* Fed. R. Civ. P. 19(b)(2) (ability to shape relief to avoid prejudice). There is, however, another forum available to Plaintiff to pursue its claims and which could provide complete relief: namely, the Circuit Court Action filed by Defendants against both Plaintiff and Emigranta. *See* Fed. R. Civ. P. 19(b)(4) (availability of an adequate remedy if the case is dismissed). Thus, if Emigranta cannot be joined, this case should be dismissed and the dispute will proceed in the Circuit Court Action. However, if Emigranta is joined in this case, as it should be, Defendants will voluntarily dismiss the Circuit Court Complaint, without prejudice.

## IV.     CONCLUSION

WHEREFORE, Defendants respectfully request that the Court enter an order: (a) directing that non-party Emigranta be made a party-plaintiff to this action; or (b) in the alternative, if Emigranta cannot feasibly be made a party plaintiff, then dismissing the Complaint; and (c) granting Defendants such other and further relief as is appropriate.

Respectfully submitted,

RIVER NORTH COLLECTIONS, LLC and ROGER L. WESTON

By: /s/  Courtney D. Tedrowe
One of Their Attorneys

Stephen Novack
*snovack@novackmacey.com*
Stephen J. Siegel
*ssiegel@novackmacey.com*
Courtney D. Tedrowe
*cdt@novackmacey.com*
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, Illinois  60606
(312) 419-6900
Doc. No. 991686

10

## CERTIFICATE OF SERVICE

Courtney D. Tedrowe, an attorney, hereby certifies that, on February 26, 2018 he caused a true and correct copy of the foregoing ***Defendants' Memorandum In Support of Their Rule 12(b)(7) Motion to Dismiss*** to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to counsel for all parties of record by operation of the Court's electronic filing system.

/s/ Courtney D. Tedrowe